**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., a non-profit corporation; SALLIE LANE, an individual; and ANNA WARE, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> THE MOBILE ZOO, an Alabama corporation, and JOHN HIGHTOWER, an individual. <br><br> Defendants. | **COMPLAINT** <br><br> Civil Action No: 1:16-cv-00030 |

This action is a citizen suit to enforce the statutory and regulatory provisions of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq*. and 50 C.F.R. Part 17. Plaintiffs People for the Ethical Treatment of Animals, Inc. ("PETA"), Sallie Lane, and Anna Ware challenge Defendants The Mobile Zoo and John Hightower's ongoing "take" of "Joe", an endangered chimpanzee. Plaintiffs allege as follows:

## INTRODUCTION

1. Defendants have confined the male chimpanzee known as Joe in isolation at their Wilmer, Alabama, roadside zoo for nearly seventeen years. Defendants keep Joe in a barren enclosure with only an old tire, a few hoses, and a handful of toddler toys for "entertainment." Defendants house Joe behind a double chain link fence, without any other barrier separating him from visitors, and have allowed and, in some instances, even encouraged visiting members of the public to throw peanuts at Joe, causing him great distress.

2.    Chimpanzees like Joe are highly social and exceptionally intelligent animals who, in their natural environment, engage in a wide range of complex social relations with other members of their species. In fact, "[t]he behavioral and cognitive abilities of chimpanzees are extremely similar to those of humans." Roger Fouts, *On the Psychological Well-Being of Chimpanzees*, 1 J. Applied Animal Welfare Sci. 65, 65 (1998); *see also* Jane Goodall, *The Chimpanzees of Gombe: Patterns of Behavior* 118 (1986) (noting that chimpanzees "have emotions similar to those in which in ourselves we label pleasure, joy, sorrow, boredom and so on."). It is thus well documented that chimpanzees suffer physical and psychological pain "just as we do and often for the same reasons." Fouts, *supra*, at 65. Like humans, chimpanzees therefore require social interaction with other members of their species, physical and psychological enrichment, and a sanitary and safe environment in order to thrive.

3.    As of September 14, 2015, both wild and captive chimpanzees are listed as "endangered" under the ESA. This means that chimpanzees have the right, under federal law, to live in an environment that meets their unique needs: the ESA requires that they be free from harm and harassment such that they are able to engage in species-specific behavioral patterns. 16 U.S.C. § 1538; 50 C.F.R. § 17.3.

4.    The years in which Defendants have kept Joe in barren, unsanitary, and inhumane solitary confinement have undoubtedly caused him immense harm, and have rendered it altogether impossible for him to engage in normal chimpanzee behaviors such as foraging, nest-building, climbing, play, tool use, and socializing.

5.    As a result of Defendants' harmful and harassing conduct, Joe exhibits behaviors that evidence distress and psychological harm. For example, Joe is suffering from hair loss on his body, a condition that can result from over-grooming that occurs when chimpanzees are kept in

social isolation and lack psychological stimulation. Indeed, USDA inspectors have issued numerous and repeated citations to The Mobile Zoo for its failure to provide Joe with care consistent with the minimum requirements of the Animal Welfare Act ("AWA").

6.     By this action, Plaintiffs seek to redress Defendants' ongoing harm to and harassment of Joe in violation of the ESA. Because of Defendants' longstanding and ongoing refusal to provide humane care for Joe, Plaintiffs seek an injunction directing Defendants to comply with ESA by relinquishing Joe to a sanctuary accredited by the North American Primate Sanctuary Alliance ("NAPSA").

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g), as well as 28 U.S.C. § 1331 (federal question).

8.     Pursuant to 16 U.S.C. § 1540(g)(2), Plaintiffs furnished notice regarding the violations alleged in this Complaint to Defendants and to the Secretary of the Interior and the United States Fish & Wildlife Service ("FWS") more than sixty days prior to the filing of this action. Notice letters for Plaintiffs PETA and Salle Lane were sent on July 22, 2015, and September 14, 2015, and a notice letter for Plaintiffs PETA and Anna Ware was sent on November 6, 2015. Copies of those letters are attached hereto as Exhibits A, B, and C, respectively. The Secretary of the Interior has not commenced an action to impose a penalty pursuant to 16 U.S.C. § 1540(a) to redress the violations set forth in those notices. Likewise, the United States has not commenced and is not diligently prosecuting a criminal action to redress these violations.

9.      Venue is proper in the Southern District of Alabama pursuant to 28 U.S.C.
§ 1391(b) and 16 U.S.C. § 1540(g)(3)(A) as the Defendants reside in the District and the
violations of the ESA alleged herein have occurred and continue to occur in the District.

## THE PARTIES

### Plaintiff People for the Ethical Treatment of Animals, Inc.

10.     Plaintiff People for the Ethical Treatment of Animals, Inc. ("PETA") is a Virginia
non-stock corporation and animal protection charity pursuant to Section 501(c)(3) of the Internal
Revenue Code, with its headquarters located in Norfolk, Virginia. PETA is dedicated to
protecting animals from abuse, neglect, and cruelty. It undertakes these efforts through public
education, cruelty investigations, research, animal rescue, legislation, special events, celebrity
involvement, protest campaigns, administrative petitions and comments, and lawsuits to enforce
laws enacted to protect animals. It brings this case on its own behalf to protect its organizational
interests and resources.

11.     As part of its organizational activities, PETA has been and will continue to be
required to expend resources educating the public about the unlawful and inhumane conditions in
which Joe has been kept for nearly seventeen years at The Mobile Zoo. The Mobile Zoo
represents to the public on its website that it "is dedicated to providing a good home for these
wildlife", however the conditions in which Joe is kept in no way constitute a "good home"—
rather, The Mobile Zoo maintains Joe in egregious conditions constituting harm and harassment
under the ESA. Accordingly, PETA has been and will continue to be required to spend resources
documenting the conditions under which Joe is held and informing the public that, in fact, these
conditions cause him to suffer greatly. PETA has also been and will continue to be required to
spend resources to urge The Mobile Zoo to relinquish possession of Joe and allow him to be

4

relocated to a NAPSA-accredited sanctuary.[1]  PETA has been and will continue to be required to expend these resources as a direct result of the unlawful and inhumane conditions in which The Mobile Zoo holds Joe.

12.     PETA's injuries are likely to be redressed if The Mobile Zoo is ordered to cease all activities constituting a take of Joe under the ESA. PETA will no longer have to expend resources educating the public about and seeking to improve the unlawful and inhumane conditions in which Joe is kept because The Mobile Zoo would only be able to maintain Joe by providing him with an appropriate living space, adequate and appropriate enrichment, safe and appropriate shelter, and compatible companions of his own species; or, if The Mobile Zoo is unable to comply with the ESA by providing him with these basic necessities, by ensuring that Joe is transferred to an appropriate NAPSA-accredited sanctuary. The resources PETA spends educating the public that the conditions under which Joe is presently kept are unlawful and inhumane, and urging The Mobile Zoo to release Joe from these conditions, could then be directed to other PETA projects, including efforts to protect other chimpanzees and animals of other species, in furtherance of PETA's overall mission.

---

[1] Plaintiffs' notice letters also informed Defendants that PETA had secured placement for Joe at an appropriate and accredited sanctuary, and that PETA would arrange and pay for Joe's placement, transport, and veterinary care as part of his relocation. Defendants declined to respond to PETA's offer.

**Plaintiff Sallie Lane**

13.     Plaintiff Sallie Lane lives in Tuscaloosa, Alabama, and is a former employee of The Mobile Zoo. Over the course of her employment, Ms. Lane developed an aesthetic and emotional connection with Joe and, as a result, has been injured and adversely affected by Defendants' harm and harassment of him.

14.     Ms. Lane has felt a strong personal connection to animals for her entire life, and has sought out regular opportunities to observe them. Prior to moving to Mobile, Alabama, Ms. Lane worked at the Gulf Coast Zoo in Gulf Shores, Alabama. Upon relocating to Mobile, Ms. Lane had a strong desire to continue working with and building connections to individual animals and therefore contacted The Mobile Zoo to request a volunteer position. Ms. Lane initially volunteered by clearing bamboo from The Mobile Zoo property.

15.     Approximately one year after Ms. Lane contacted The Mobile Zoo about volunteering, Mr. Hightower reached out to her and asked if she would be interested in employment. Eager to spend time around the animals housed at The Mobile Zoo, Ms. Lane accepted Mr. Hightower's offer of employment. She began working at The Mobile Zoo in or around January 2013.

16.     Ms. Lane worked full time for The Mobile Zoo for the duration of her employment, and lived in a trailer on site. She was either the sole employee or one of only two employees at The Mobile Zoo for the entire time that she was employed there,[2] and had primary responsibility for caring for all animals, including Joe.

---

[2] For approximately the first month of Ms. Lane's employment, there was one other employee, a woman by the name of Leigh, who left The Mobile Zoo after having a falling out with Mr. Hightower. One other employee, Jordan Padgett, was hired shortly before Ms. Lane left The Mobile Zoo.

6

17.     Ms. Lane met Joe on one of her first days of employment when Mr. Hightower instructed her to feed Joe by putting food in a metal bucket in the indoor portion of his enclosure. From that point until the end of her employment, Ms. Lane fed Joe every day and observed him several times per day in his outdoor enclosure.

18.     Almost immediately upon beginning her employment, Ms. Lane observed that Defendants were refusing to provide Joe with adequate care. Mr. Hightower ordered that Joe be fed only one meal per day. If Joe did not finish his meal from the previous day, Mr. Hightower directed Ms. Lane not to feed him until the following day.

19.     In addition, on multiple occasions, Ms. Lane intervened when visitors to The Mobile Zoo harassed Joe by, for example, poking him with sticks or tossing dirt at him through his chain link outdoor enclosure.

20.     In observing Joe on a daily basis, Ms. Lane also noticed that he always appeared agitated—he would throw dirt and rocks, and spit at anyone who approached his enclosure.

21.     Ms. Lane found Defendants' treatment of Joe and his resulting distress to be very emotionally upsetting.

22.     On more than one occasion during her employment with The Mobile Zoo, Ms. Lane therefore approached Mr. Hightower to request that Joe's conditions be improved. Each time, Mr. Hightower refused Ms. Lane's requests.

23.     As a result of her concern for Joe and the other animals at The Mobile Zoo, Ms. Lane was emotionally distraught and unable to sleep well.

24.     In or around March of 2013, Ms. Lane left her job at The Mobile Zoo because she disagreed with and experienced ongoing aesthetic harm as a result of the Defendants' failure to adequately care for Joe and other animals in their custody.

25.     Immediately upon leaving The Mobile Zoo, Ms. Lane began contacting animal protection organizations in an effort to improve conditions for Joe and the other animals at the facility.

26.     Since leaving her position at The Mobile Zoo, Ms. Lane has not stopped thinking about Joe. She continues to be concerned about his welfare, speaking about him frequently to friends and family. Ms. Lane experiences ongoing aesthetic harm and emotional anguish resulting from the knowledge that Joe continues to be kept in the inhumane conditions that she witnessed during her employment.

27.     Ms. Lane has not been able to visit Joe since leaving her position at The Mobile Zoo as she does not believe that Mr. Hightower would allow her to enter the premises because of her decision to blow the whistle on the facility, and she has fears for her own safety if she were to return. Even if she were permitted to return, however, she could not do so without sustaining further aesthetic injury as a result of witnessing the conditions in which Defendants continue to keep Joe.

28.     Ms. Lane nevertheless strongly desires to see Joe again and would relish viewing him in a safe and humane environment where he is provided with appropriate companionship and enrichment.

29.     If Plaintiffs prevail in this action and Joe is moved to an accredited sanctuary, Ms. Lane would make immediate arrangements to visit him as soon as her work and school schedules allow. Ms. Lane's injury would thus be redressed by a favorable outcome in this litigation as it would allow her to view Joe in humane conditions that do not "take" him in violation of the ESA, and that do not thereby cause Ms. Lane to suffer an aesthetic injury.

**Plaintiff Anna Ware**

30.     Plaintiff Anna Ware lives in Atlanta, Georgia. Ms. Ware has visited Joe at The Mobile Zoo and has developed aesthetic and emotional connections to him. As a result, Ms. Ware has been injured and adversely affected by Defendants' harm and harassment of Joe.

31.     Ms. Ware has felt a strong personal connection to animals for her entire life, and is a dedicated advocate for their welfare: she has assisted in the rescue of animals of various species and has served on the board of directors for an animal welfare nonprofit in Atlanta. Ms. Ware feels compelled to advocate for the welfare of animals subjected to inhumane treatment in part because seeing them suffer causes her a great deal of emotional distress.

32.     Ms. Ware has felt drawn to chimpanzees in particular since early 2015 when she helped to arrange for the transfer of a female chimpanzee to an accredited sanctuary. In observing that chimpanzee, Ms. Ware came to appreciate the similarities that chimpanzees bear to humans, including with regard to their capacity for suffering. It therefore causes her to experience emotional anguish to know that a member of this species is living in inhumane conditions.

33.     Ms. Ware first heard about Joe in 2015 and decided to travel to The Mobile Zoo so that she could observe and assess his conditions first hand. Ms. Ware first met Joe on September 1, 2015 and was able to observe him from outside of his enclosure.

34.     During that visit, Ms. Ware noticed that Joe was housed in a very small cage and did not have any chimpanzee companion.

35.     Seeing Joe in these conditions was very upsetting to Ms. Ware. She was deeply saddened to see that he lacked appropriate enrichment and was housed in such a small space.

36.     Ms. Ware attempted to visit Joe on two more occasions after her initial visit, however Defendant Hightower would not allow her to enter The Mobile Zoo facility. During one of those visits, Mr. Hightower told her that she could only visit Joe if she agreed to sign a statement claiming that she believed Joe was being treated well and that he was in good condition. Ms. Ware refused to sign the statement as she did not believe it to be true, and was therefore not permitted to enter The Mobile Zoo.

37.     Ms. Ware nevertheless strongly desires to see Joe again and to observe him in a safe and humane environment where he is provided with appropriate companionship and enrichment. Ms. Ware even offered to pay for Joe's placement, transport, and veterinary care if Defendants agreed to transfer him to an accredited sanctuary.

38.     Ms. Ware continues to think about Joe frequently, to be concerned about his welfare, and to speak about him regularly to her friends and colleagues. She feels ongoing emotional distress and suffers aesthetic harm resulting from the knowledge that he is still being kept by Defendants in inhumane conditions.

39.     If Plaintiffs prevail in this action and Joe is moved to an appropriate sanctuary, Ms. Ware would make immediate arrangements to visit him and would even be willing to accompany him when he is transferred to the new facility. Ms. Ware's injury would thus be redressed by a favorable outcome in this litigation as it would allow her to view Joe in humane conditions that do not "take" him in violation of the ESA, and that do not thereby cause Ms. Ware to suffer an aesthetic injury.

### Defendant The Mobile Zoo

40.     Defendant The Mobile Zoo is an Alabama corporation located at 15161 Ward Road West, Wilmer, Alabama 36587, where Joe is confined.

**Defendant John Hightower**

41.     Defendant John Hightower is an individual who at all relevant times conducted business and maintained a residence at The Mobile Zoo in Alabama. Mr. Hightower is the registered agent for The Mobile Zoo, and is and was at all relevant times the director and/or president of The Mobile Zoo.

## STATUTORY & REGULATORY BACKGROUND

42.     The ESA recognizes that certain species of wildlife have been rendered extinct due to a lack of adequate concern and conservation, and that other species are now at risk for extinction. In enacting the ESA, Congress declared that the "United States has pledged itself as a sovereign state in the international community to conserve to the extent practicable the various species of . . . wildlife . . . facing extinction." 16 U.S.C. § 1531(a)(4). The ESA acknowledges that such species hold "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3).

43.     The ESA defines an "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6).

44.     The ESA requires the Secretary of the Interior to determine which species are endangered. 16 U.S.C. § 1533. The Secretary fulfills this obligation through the FWS.

45.     On September 14, 2015, the FWS classified captive chimpanzees, such as Joe, as "endangered" under the ESA. This change marked the elimination of an unlawful 25-year "split listing" that treated chimpanzees as endangered only if they were located in the wild. In promulgating this rule change, the FWS "determined that the Act does not allow for captive chimpanzees to be assigned separate legal status from their wild counterparts on the basis of their captive state." 80 Fed. Reg. 34500 (June 16, 2015). It therefore "eliminate[ed] the separate

classification of chimpanzees held in captivity and list[ed] the entire species, *wherever found*, as

an endangered species under the Act." *Id.* (emphasis added); *see also* 50 C.F.R. § 17.11(h)

(listing chimpanzees as endangered).

46.     It is unlawful under the ESA for any person within the United States to "take" any

member of a species (including captive chimpanzees) that has been listed as endangered, 16

U.S.C. § 1538; 50 C.F.R. § 17.11(h).

47.     The ESA defines the term "take" to include "harass, harm, pursue, hunt, shoot,

wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C.

§ 1532. The term "harm" as used in the definition of "take" means an act which "kills or injures

wildlife." 50 C.F.R. § 17.3. The term "harass" means "an intentional or negligent act or omission

which creates the likelihood of injury to [an endangered animal] by annoying [him] to such an

extent as to significantly disrupt normal behavioral patterns which include, but are not limited to,

breeding, feeding, or sheltering." *Id.*

48.     The ESA also prohibits the possession of any animal that has been unlawfully

taken. 16 U.S.C. § 1538.

49.     The ESA authorizes the FWS to issue a permit for any act that is otherwise

prohibited by 16 U.S.C. § 1538, but only if such act is "for scientific purposes or to enhance the

propagation or survival of the affected species." 16 U.S.C. § 1539(a)(1)(A). On information and

belief, Defendants do not currently have a permit under 16 U.S.C. § 1539(a)(1)(A) to take Joe in

the manner described herein.

50.     This ESA allows citizens to bring suit to enjoin "any person . . . who is alleged to

be in violation" of the "take" provisions of the statute. 16 U.S.C. § 1540(g)(1)(A).

## RELEVANT FACTS

51.     Defendant The Mobile Zoo is a roadside zoo that confines and exhibits many species of wildlife, including endangered animals, and charges the public a fee to view, feed, and interact with those animals. Among the animals confined at The Mobile Zoo is the chimpanzee known as Joe.

52.     Joe has been held at The Mobile Zoo since at least 1999. As explained in the paragraphs that follow, the inhumane conditions in which Joe is kept constitute harm and harassment under the ESA.

### The Mobile Zoo Isolates Joe from Any Other Member of His Species

53.     The Mobile Zoo confines Joe, a member of a complex, intelligent, and highly social endangered species, in a barren cage and in complete isolation. Joe has been denied the companionship of a single other chimpanzee for nearly the entire time that The Mobile Zoo has held him. In fact, because there are no other chimpanzees at The Mobile Zoo at all, Joe does not even get to enjoy the stimulation of seeing or hearing other members of his species at a distance.

54.     In nature, chimpanzees live in groups and interact with members of their community in myriad and complex ways. They lead active, stimulating lives, and form deep and lasting social bonds, which are critical to their long-term health and psychological well-being. They live in fluid social groups with unique cultural customs. They have sophisticated methods of communication—through calls, body language, and facial expressions—and engage in affectionate social grooming. Male chimpanzees remain with their natal families for their entire lives and form close social bonds with other males in order to hunt cooperatively, establish social order, protect their mates, and maintain territorial boundaries.

55.     In order to ensure their physical and psychological health, chimpanzees in captivity require similar social interaction. According to chimpanzee experts, long-term solitary

13

confinement is extremely distressing for chimpanzees, and those who are housed alone for long periods of time typically exhibit symptoms of depression, anxiety, and other psychological disturbances. Stereotypical behaviors—repetitive, pointless movements resulting from stress, psychosis, and poor welfare—are common among chimpanzees confined under inadequate conditions and include chronic over-grooming, body rocking, head banging (on the wall or ground), and, in some severe cases, self-mutilation.

56.     Indeed, the USDA has acknowledged that "[s]ocial interactions are considered to be one of the most important factors influencing the psychological well-being of most nonhuman primates." USDA, Animal & Plant Health Inspection Service, *Final Report on Environment Enhancement to Promote the Psychological Well-Being of Nonhuman Primates* § IV.A (1999). Companions provide *more* than just social company. They supply "environmental novelty, multi-sensory stimulation, something to manipulate, and opportunities for cognitive challenge and control." *Id.* § IV.A.10.

57.     Despite the well-documented social needs of chimpanzees, Defendants continue to confine Joe alone in a barren enclosure. Living in isolation causes Joe to suffer great psychological harm, and harasses him by failing to provide an environment in which he can express a wide range of normal chimpanzee behaviors: Joe has no chimpanzee companions with whom he can bond, play, groom, or otherwise interact. On information and belief, this deprivation causes Joe to exhibit stereotypic behavior, including at least over-grooming resulting in loss of body hair. Depriving Joe of this necessary stimulation constitutes a take in violation of the ESA.

## The Mobile Zoo Denies Joe a Complex Environment

58.     In addition to the companionship of other members of their species, chimpanzees must be provided with extensive, varied, and well-planned enrichment (i.e. the opportunity to engage in species-typical behavior).

59.     Joe's entire world, however, consists of a horse stall and an enclosure no larger than a dog-run, with an old tire, a few hoses, and a handful of unsanitary toddler toys for "entertainment."He is held behind double layers of chain-link fence, and he has little to do aside from begging for peanuts from visitors. This deprivation is harmful to Joe's physical and psychological health, and constitutes harassment by depriving him of the ability to engage in species-typical behaviors.

60.     Chimpanzees are extraordinarily intelligent animals who use tools and can solve novel physical problems. In the wild, they spend their days building nests, playing, climbing, brachiating (swinging hand to hand), and foraging for food, among other activities. Because chimpanzees are such an active and intelligent species, the denial of enrichment that allows them to engage in these behaviors is a significant source of stress, and injurious to their physical and psychological health.

61.     According to the USDA, enclosures for captive chimpanzees must therefore take into account not just dimensions and total volume of the space, but should be constructed such that the social, developmental, and physical environment enhance the psychological well-being of the animals. Adequate enclosure space must be structured to be usable and include opportunities for species-typical resting, play, and exploration, and behaviors such as foraging, nest-building, climbing, and tool use, as well as social interaction and adjustments.

62.    In recognition of the unique social, developmental, and physical needs of primates, regulations issued by the USDA to implement its obligations under the AWA require that animal exhibitors "develop, document, and follow an appropriate plan for environment enhancement adequate to promote the psychological well-being of nonhuman primates." 9 C.F.R. § 3.81. The plan is to include provisions to address the social needs of nonhuman primates, and must allow them to express species-typical behaviors.

63.    The Mobile Zoo has been repeatedly cited for failing to follow an environmental enhancement plan to address Joe's social and psychological needs. A USDA inspector noted in an inspection report that Joe did not have "any useful enrichment (only a tire and pieces of a toy)" and had "no opportunity for increased cage complexity providing objects to manipulate such as foraging, human interaction, and task oriented feeding for this species."

64.    Apparently undeterred by the USDA's citations, Defendants continue to confine Joe in a barren enclosure with virtually no appropriate enrichment. Such conditions are harmful to Joe's physical and psychological health, and harass him by failing to provide an environment in which he can express the wide range of behaviors that chimpanzees exhibit in nature: confinement in a nearly-empty cage with only an old tire, hoses, and toddler toys for "entertainment" deprives Joe of the ability to engage in species-typical resting, exploration, play, foraging, nest-building, climbing, and tool use.

65.    Further, the Mobile Zoo's failure to employ an adequate number of people ensures that, even if it were willing to do so, it would not be able to implement an appropriate enrichment plan. Indeed, the USDA found in May 2015 and September 2015 that The Mobile Zoo does not employ an adequate number of employees to carry out an acceptable level of

animal husbandry at the facility. The conditions in which Joe is kept thus constitute, and will continue to constitute, a take in violation of the ESA.

### The Mobile Zoo Exposes Joe to Harm and Harassment by the Public

66.     For captive chimpanzees such as Joe, some of the greatest stressors are those that they can neither control nor escape. In chimpanzees, the presence of human visitors has been shown to increase aggression and reduce normal behavioral patterns such as grooming, foraging, and play.

67.     Aversive experiences with humans cause chimpanzees to become more fearful of humans and more distressed by their presence. The impact of this stress can be reflected both behaviorally and physiologically.

68.     For this reason, the USDA recommends that, for primates on public display, long distances should be maintained between the viewing public and the animals.

69.     In the outdoor enclosure at The Mobile Zoo where Joe is kept, however, he cannot escape the taunts of visitors who have come to gawk at him.

70.     Indeed, the USDA cited the facility after inspectors found that The Mobile Zoo *encouraged* visitors to throw peanuts into Joe's cage, "giving some people opportunity to throw the peanuts *at* Joe." (emphasis added).

71.     Likewise, during her employment at The Mobile Zoo, Ms. Lane observed visitors taunting Joe by, for example, poking him with sticks or tossing dirt at him through his chain link outdoor enclosure.

72.     The Mobile Zoo's dearth of staff ensures that this type of harassment by visitors cannot be prevented. Indeed, as discussed above, the USDA has repeatedly found that The Mobile Zoo does not employ an adequate number of employees to carry out an acceptable level of animal husbandry.

73.     Subjecting Joe to the constant presence and abusive conduct of visitors, particularly when his only option to avoid them is to enter the horse stall that serves as his indoor enclosure (if it is open to allow him access), causes him psychological harm and places him at risk for physical injury, and likewise constitutes harassment in that it disrupts Joe's ability to engage in normal grooming, foraging, play, and other behaviors. By exposing Joe to abuse by members of the public, Defendants are thus committing a take in violation of the ESA.

### The Mobile Zoo Denies Joe a Safe, Sanitary Environment

74.     Defendants further harm and harass Joe by failing to provide him with adequate shelter. Defendants house Joe in unsafe and unsanitary conditions, putting his physical and psychological health and welfare at risk.

75.     The USDA has issued a series of citations related to conditions that directly impact Joe. Such citations demonstrate that safety and sanitation are chronic, ongoing problems at The Mobile Zoo. By way of example, the following is a non-exhaustive list of issues directly pertaining to Joe's care for which USDA has cited The Mobile Zoo in various inspection reports:

   a. "[A]n excessive accumulation of debris on the old insulation" of the ceiling of Joe's indoor enclosure and "an excessive amount of dust" in and around the enclosure;

   b. "[A]n abundance of dusty linen piled up from corner to corner" in the stall next to Joe's indoor enclosure;

   c. "[E]xcessive accumulation of cobwebs and debris" in Joe's indoor enclosure and "an excessive amount of dust" in and around his enclosure;

   d. "[T]oys in the non-human primate enclosures [that] had green growth on the surfaces";

e.  A climbing platform in Joe's enclosure that was "rusted" and a post stabilizing it that was "excessively rusted and could break causing the platform to fall down";

f.  Plastic trash in Joe's enclosure, and "clutter and discarded items that was [sic] attracting flies," as well as "a dirty cage with towels and flies swarming" in the stall next to Joe's primary enclosure;

g.  A wooden plank in Joe's primary enclosure cracked so widely that "you could see through it as the animal was jumping up and down" and a gap in the chain-link fence surrounding Joe's enclosure, creating risk of escape;

h.  Joe's outdoor enclosure was littered with "snack chip bags and an aluminum can";

i.  The "platform supports or braces" in the enclosure confining Joe were "very rusty and possibly sharp";

j.  "[E]xcessive amounts of clutter . . . haphazardly strewn about" in the area adjacent to Joe's indoor enclosure, and "a tremendous amount of dust or cobwebs" inside Joe's indoor enclosure; and

k.  "[O]ld disposable plastic salad containers" littering the outdoor enclosure confining Joe.

76.  In addition, the USDA has documented that the food fed to the animals at The Mobile Zoo is kept in unsafe and unsanitary conditions. Specifically, the USDA cited The Mobile Zoo in an inspection report for:

a.  "Boxes of donated produce sitting on the ground" for at least three hours and containing "moldy strawberries" and food that was "warm to the touch" (Defendant Hightower stated that "he did not have the means to refrigerate it" and

was "seen feeding the produce to the animals that had not been properly

refrigerated"); and

b. "[A] chest freezer that was being used to refrigerate chicken" was leaking liquid

"onto the floor that was attracting flies and had a foul odor" and "white larvae

'maggots'" appeared at the base of the freezer, which was "in disrepair" and had

an inside temperature of 63 degrees Fahrenheit.

77.     The USDA also found in May 2015 and September 2015 that The Mobile Zoo

does not employ an adequate number of employees to carry out an acceptable level of

maintenance at the facility.

78.     In addition, the USDA has issued an official warning against the facility for

subjecting animals, including Joe, to research experiments without following the legal protocols

designed to ensure that the research is not duplicative and will minimize discomfort, distress, and

pain to the animals.

79.     These inhumane, unsafe, and unsanitary conditions put Joe's physical health at

risk by exposing him to unhealthy food and a dangerous environment, and disrupt his ability to

engage in normal behavior such as foraging, nest-building, climbing, and play. As such, they

constitute an unlawful take under the ESA.

**The Mobile Zoo Refuses to Provide a Safe and Humane Environment for Joe Despite the USDA's Filing of an Official Complaint**

80.     The standard of care at The Mobile Zoo is so poor that the USDA filed an official complaint against it in January 2015. (*See* Complaint, *In re: The Mobile Zoo*, AWA Docket Nos. 15-0060 & 15-0061 (USDA Jan. 2015, *amended* Sept. 2015).) The USDA then amended its complaint in September 2015 to add allegations regarding additional violations of the AWA. (*Id.*)

81.     That complaint references many of the facts alleged above and, in addition, specifically states that, on or about June 4, 2014, Defendants "fail[ed] to handle a male chimpanzee (Joe) as carefully as possible in a manner that does not cause trauma, stress, physical harm, or unnecessary discomfort, and . . . fail[ed] to handle Joe during exhibition so there is minimal risk of harm to the animal . . . ."

82.     The complaint further states that the USDA has evidence that Defendant Hightower has threatened to shoot animals in his custody rather than to provide them with veterinary care.

83.     Given Defendants' longstanding and ongoing failure to provide Joe with adequate care, and given that such conduct was not deterred even by the USDA's filing of an official complaint, entering an injunction directing that Joe be relocated to an appropriate NAPSA-accredited sanctuary is absolutely necessary. Defendants will continue to harm and harass Joe in violation of the ESA for as long as Joe is permitted to remain in their custody. Adding additional chimpanzees to Joe's enclosure is not an option because Defendants have demonstrated beyond a doubt that they are unwilling to provide adequate care for the animals at The Mobile Zoo. Further, Defendants would be ineligible for a captive-bred wildlife permit under the ESA because of The Mobile Zoo's long history of AWA violations and because they are unable to

establish that they maintain chimpanzees "for scientific purposes or to enhance the propagation or survival of the affected species." 16 U.S.C. § 1539(a)(1)(A).

84.     Relocation to a sanctuary would give Joe access to a large, complex environment that would provide him the opportunity to climb, explore, and express species-typical behavior. Joe would benefit from a varied and robust enrichment program including varied daily activities for physical and mental stimulation. Through a gradual, safe introduction process overseen by experts in chimpanzee behavior and social dynamics, it would also offer Joe the opportunity to socialize with other chimpanzees to the extent that he chooses.

## CLAIM FOR RELIEF

### Count One: Unlawful Take of a Chimpanzee

85.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

86.     The Endangered Species Act prohibits the "take" of any endangered species within the United States. 16 U.S.C. § 1538(a)(1)(B).

87.     Chimpanzees, both captive and wild, have been declared endangered, effective September 14, 2015. 80 Fed. Reg. 34500 (June 16, 2015).

88.     Defendants' ongoing practices of housing the chimpanzee Joe in isolation, without access to adequate and appropriate enrichment; exposing him to harassment by visitors; and maintaining him in an unsafe and unsanitary environment harms and harasses him in violation of 16 U.S.C. § 1538(a)(1)(B).

89.     Pursuant to 16 U.S.C. § 1540(g)(1)(a), this Court has the authority to issue an injunction prohibiting Defendants from committing further violations of 16 U.S.C.

§ 1538(a)(1)(B), and ordering them to relinquish possession of Joe to an appropriate NAPSA-accredited sanctuary.

### Count Two: Unlawful Possession of a Taken Chimpanzee

90.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

91.     The Endangered Species Act further prohibits possession of a species that has been unlawfully taken. 16 U.S.C. § 1538(a)(1)(D).

92.     Defendants' continued possession of Joe, who has been taken as set forth above, constitutes a violation of 16 U.S.C. § 1538(a)(1)(D).

93.     Pursuant to 16 U.S.C. § 1540(g)(1)(a), this Court has the authority to issue an injunction prohibiting Defendant from continuing to possess Joe in violation of 16 U.S.C. § 1538(a)(1)(D), and ordering them to relinquish possession of Joe to an appropriate NAPSA-accredited sanctuary.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Declare, pursuant to 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act), that Defendants are violating the "take" provision of the ESA, 16 U.S.C. § 1538(a)(1)(B);

B.     Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendants have violated and continue to violate 16 U.S.C. § 1538(a)(1)(D) of the ESA by possessing Joe, who has been unlawfully taken by Defendants;

C.     Enjoin Defendants from continuing to violate the ESA and its implementing regulations with respect to Joe, including the prohibitions on "taking" an endangered species and possessing an endangered species that has been unlawfully taken;

D.      Award Plaintiffs their reasonable attorneys' fees and litigation costs for this action; and

E.      Grant such other and further relief as the Court deems just and proper.


Date:   January 19, 2015                Respectfully submitted,


                                        /s/ *Henry Brewster*_____
                                        Henry Brewster (BREWH7737)
                                        HENRY BREWSTER, LLC
                                        205 N. Conception Street
                                        Mobile, AL 36633-1051
                                        Telephone: (251) 338-0630
                                        Facsimile: (251) 338-0632
                                        Email: hbrewster@brewsterlaw.net


                                        /s/ *Matthew Strugar*_____
                                        Matthew Strugar (*pro hac vice* application forthcoming)
                                                MatthewS@petaf.org
                                        Caitlin Hawks (*pro hac vice* application forthcoming)
                                                CaitlinH@petaf.org
                                        PETA FOUNDATION
                                        2154 Sunset Blvd.
                                        Los Angeles, CA 90026
                                        Telephone: 323-210-2263
                                        Facsimile: 202-540-2208


                                        *Attorneys for Plaintiffs*